*Nakul M. Havnurkar*
*nakul@pabilaw.org*
*Attorney for Plaintiffs*
*Massachusetts BBO #: 704307*
*Brain Injury Rights Group*
*300 East 95th Street, Suite 130*
*New York, New York 10128*
*(646) 850-5035*

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| *Plaintiff(s)* ) | |
| **NANCY ROE**, as Parent and Natural ) | |
| Guardian of **A.R**., and Individually; ) | |
| **AMY MARANVILLE**, as Parent and Natural ) | |
| Guardian of **P.M**. and Individually, ) | |
| **MARIA POPOVA**, as Parent and Natural ) | |
| Guardian of **S.P**. and Individually; and ) | |
| and on behalf of all others similarly situated; ) | |
| ) | Civil Action No. |
| ) | Honorable |
| ) | |
| v. ) | PROPOSED CLASS |
| ) | ACTION COMPLAINT |
| *Defendant(s)* ) | AND REQUEST FOR |
| **CHARLES BAKER,** in his official ) | AUTOMATIC AND |
| capacity as Governor**,** ) | PRELIMINARY |
| **MASSACHUSETTS DEPARTMENT OF** ) | INJUNCTION |
| **ELEMENTARY AND SECONDARY** ) | |
| **EDUCATION**; ) | DEMAND FOR JURY |
| **BROOKLINE PUBLIC SCHOOLS**; ) | TRIAL |
| **SOMERVILLE PUBLIC SCHOOLS**; ) | |
| **WELLESLEY PUBLIC SCHOOLS**; ) | |
| **JEFFREY C. RILEY,** in his official capacity; ) | |
| **DR. JAMES MARINI**, ) | |
| in his official capacity as Interim Superintendent; ) | |
| **MARY SKIPPER**, in her official capacity as ) | |
| Superintendent; ) | |
| **DR. DAVID LUSSIER**, in his official capacity as ) | |
| Superintendent ) | |

Plaintiffs, Nancy Roe, Maria Popova, and Amy Maranville, individually and on behalf of

their special needs children (collectively referred to as "Plaintiffs"), for their Proposed Class

Action Complaint and Request for Automatic Injunction against the Massachusetts Department of

Elementary and Secondary Education ("DESE"), and Brookline Public Schools ("BPS"), Somerville Public Schools ("SPS"), Wellesley Public Schools ("WPS"), (collectively, the "School District Defendants" or "Named LEAs"), and individual Defendants Charles Baker, Jeffrey C. Riley, Dr. James Marini, Mary Skipper, and Dr. David Lussier, in their official capacities ("individual Defendants"), allege as follows:

## PRELIMINARY STATEMENT

This action is brought under the Individuals with Disabilities Education Act, 20 U.S.C. § 1401, *et seq.* ("IDEA"), The Special Education Regulations of Massachusetts, 603 C.M.R. 28.00 *et seq*. ("Regulations"), Section 504 of the Rehabilitation Act of 1973 ("§ 504"), 29 U.S.C. § 794(a); 34 C.F.R. § 104.4(a), Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12132, 28 C.F.R. § 35.104, 42 U.S.C. § 1983, the Equal Protection Clause of the Fourteenth Amendment, the Racketeer Influenced and Corrupt Organizations ("RICO") Act of 1970, 28 U.S.C. § 1961-1968 and the concomitant implementing regulations, case law and public policy.

Plaintiffs are children with disabilities and the parents of those children, who were denied their rights under IDEA, the Regulations, the ADA, § 504, the Equal Protection Clause of the Fourteenth Amendment, and RICO for the 2019-2020 and 2020-2021 school years by Defendants. Plaintiffs seek declaratory and injunctive relief to enjoin Defendants from violating their procedural and substantive rights under IDEA, the Regulations, the ADA, § 504, the Equal Protection Clause of the Fourteenth Amendment, and RICO.  Specifically, Plaintiffs seek a judgment declaring that the unilateral change of class members' educational placement for more than ten days cumulatively in the 2019-2020 and 2020-2021 school years, respectively, triggered the IDEA's stay-put provision that required return to Plaintiffs' status quo, in-person instruction and services; and that Defendants herein violated the procedural safeguards of IDEA and

2

discriminated against Plaintiffs under IDEA, the Regulations, §504, the ADA, and § 1983. Plaintiffs also seek an injunction to prevent Governor Baker, the DESE, the named LEAs, and other similarly situated LEAs from repeating this conduct; specifically, unilaterally changing the Plaintiffs' educational placement for more than ten days in the 2021-2022 school year and beyond, in the event of any future school closures without further Order of this Court or otherwise.

## JURISDICTION AND VENUE

1.  Jurisdiction of the United States District Court for the District of Massachusetts is invoked under 20 U.S.C. § 1415(i)(2), providing for jurisdiction and a right of action in this Court for parties aggrieved under IDEA.

2.  Jurisdiction of the United States District Court for the District of Massachusetts is also invoked under Section 504 of the Rehabilitation Act of 1973 ("§ 504"), 29 U.S.C. § 794(a); 34 C.F.R. § 104.4(a), and Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12132; 28 C.F.R. § 35.104.

3.  Jurisdiction is also invoked under 42 U.S.C. § 1983.

4.  Jurisdiction is also invoked under the Racketeer Influenced and Corrupt Organizations Act of 1970 under 28 U.S.C. § 1961-1968 of RICO, specifically 28 U.S.C. § 1964.

5.  Jurisdiction is also conferred by 28 U.S.C. § 1331, providing for jurisdiction of all civil actions arising under the laws of the United States.

6.  This Court may also order declaratory and injunctive relief under 28 U.S.C. § 2201 and 2202.

7.  The Court also has pendent jurisdiction to adjudicate any state claims, which may arise out of the same facts as the federal claims asserted herein under 28 U.S.C. § 1367.

8.  Venue is proper in the United States District Court for the District of Massachusetts, as authorized by 28 U.S.C. § 1391.

9.    Plaintiffs have not exhausted their administrative remedies under 20 U.S.C. § 1415(i)(2) because they fall within the exceptions to 20 U.S.C. § 1415(i)(2), including 20 § U.S.C. 1415(j).

## THE PARTIES

10.   Plaintiff Nancy Roe is the parent and legal guardian of A.R. *Id.*

11.   At all relevant times herein, A.R. resided with Plaintiff Nancy Roe in Brookline, Massachusetts.

12.   At all relevant times herein, A.R. resided in the Brookline Public School District.

13.   Plaintiff A.R. was sixteen years old in March 2020 when Brookline Public Schools ("BPS") closed due to the COVID-19 Pandemic, and therefore a minor during the 2019-2020 and 2020-2021 school years.  **Exhibit 2**,[1] 1/28/21 A.R. IEP.

14.   Plaintiff Amy Maranville is the parent and legal guardian of P.M. *Id.*

15.   At all relevant times herein, P.M. resided with Plaintiff Amy Maranville in Somerville, Massachusetts.

16.   At all relevant times herein, P.M. resided in the Somerville Public School District.

17.   Plaintiff P.M. was three years old in March 2020 when Somerville Public Schools ("SPS") closed due to the COVID-19 Pandemic, and therefore a minor during the 2019-2020 and 2020-2021 school years.  **Exhibit 3**, 10/09/20 P.M. IEP.

18.   Plaintiff Maria Popova is the parent and legal guardian of S.P. *Id.*

19.   At all relevant times herein, S.P. resided with Plaintiff Maria Popova in Wellesley, Massachusetts.

20.   At all relevant times herein, S.P.  resided in the Wellesley Public School District.

---

[1] Exhibit 1 was intentionally omitted herefrom.

4

21.   Plaintiff S.P. was seventeen years old in March 2020 when Wellesley Public Schools ("WPS") closed due to the COVID-19 Pandemic, and therefore a minor during the 2019-2020 and 2020-2021 school years.  **Exhibit 4**, 11/1/19 S.P. IEP and 11/12/20 S.P. IEP.

22.   Named Plaintiffs are children with disabilities and their parents, as defined by 20 U.S.C. § 1401(3), and are entitled to receive a free and appropriate public education ("FAPE") and related services from Defendants.  **Exhibits 2-4**.

23.   Defendant Charles Baker is the governor of Massachusetts and maintains an office located at Massachusetts State House, 24 Beacon St., Room 280 Boston, Massachusetts, and is responsible for the oversight and management of the State of Massachusetts.

24.   Defendant DESE's principal place of business is Malden, Massachusetts, and has locations throughout the State of Massachusetts.

25.   Defendant BPS's primary place of business is Brookline, Massachusetts.

26.   Defendant SPS's primary place of business is Somerville, Massachusetts.

27.   Defendant WPS's primary place of business is Wellesley, Massachusetts.

28.   Defendant Jeffrey C. Riley is the Commissioner of Schools for the Commonwealth of Massachusetts.

29.   Defendant Dr. James Marini is the Superintendent of Brookline Public Schools.

30.   Defendant Mary Skipper is the Superintendent of Somerville Public Schools.

31.   Dr. David Lussier is the Superintendent of Wellesley Public Schools.

32.   At all relevant times, Plaintiffs resided and continue to reside in their school districts.  **Exhibits 2-4.**

33.   Student Plaintiffs are not expressly named within this complaint because of privacy provisions in IDEA as well as the Family Education Rights Privacy Act ("FERPA"), 20

U.S.C. § 1232.

34. Defendant Massachusetts Department of Elementary and Secondary Education is, and was at all material times, a state educational agency ("SEA") that manages and controls the educational affairs of Massachusetts public schools.

35. Defendant DESE is responsible for ensuring all LEAs, including BPS, SPS and WPS provide a FAPE to all Massachusetts students with disabilities under statutory rights arising under IDEA, the Regulations, the ADA, § 504, and § 1983 and their implementing regulations.

36. The State of Massachusetts and the DESE have established policies and procedures, both written and informal, concerning the implementation of IDEA.

37. The DESE receives funding under IDEA, 20 U.S.C. § 1412, the ADA, and § 504, and therefore must comply with the statutes' provisions.

38. The Named LEAs are local education authorities ("LEAs"), defined by 14 U.S.C. §1401 and 34 C.F.R. § 300.28, responsible for providing Plaintiffs with a FAPE.

## FACTUAL ALLEGATIONS

39. Plaintiffs bring this action under IDEA, the Regulations, the ADA, § 504, § 1983, and RICO seeking declaratory and injunctive relief to enjoin the DESE and the Named LEAs, and other similarly situated LEAs, from violating their procedural and substantive rights under IDEA, the Regulations, the ADA, § 504, § 1983 and RICO.

40. The primary mechanism for ensuring the implementation of IDEA's mandate of a FAPE is the Individualized Education Plan ("IEP"), as defined by 20 U.S.C. § 1401 (14), 1414(d).

41. An IEP is a written statement, prepared for every child with a disability, that sets forth the special education and related services, supplementary aids and services, and program modifications or supports to be provided to the child, or on behalf of the child, to enable that

child to achieve a comprehensive set of annual goals and short-term objectives.

42. In response to the COVD-19 Pandemic, the United States Department of Education ("U.S. DOE") published two guidance documents to school districts in March of 2020: a supplemental fact sheet and a questions and answers document. **Exhibit 5**, March 12, 2020 Questions and Answers on Providing Services to Children with Disabilities During the Coronavirus Disease 2019 Outbreak; **Exhibit 6**, March 21, 2020, Supplemental Fact Sheet.

43. The Fact Sheet stated: "To be clear: ensuring compliance with the Individuals with Disabilities Education Act (IDEA), Section 504 of the Rehabilitation Act (Section § 504), and Title II of the Americans with Disabilities Act should not prevent any school from offering educational programs through distance instruction." *Id.*

44. The Questions and Answers sheet stated that each school would have to "make an individualized determination whether and to what extent compensatory services may be needed, consistent with applicable requirements, including to make up for any skills that may have been lost." **Exhibit 5**.

45. The U.S. DOE did not provide any waivers of IDEA to any state. **Exhibits 5 and 6**.

46. On March 15, 2020, Massachusetts Governor Charles Baker issued an order that "all public and private elementary and secondary (K-12) schools in the Commonwealth, excluding residential day schools for special needs students, shall suspend all normal, in-person instruction and other educational operations at the end of the school day on Monday, March 16, 2020, and shall not re-open for normal operations before Monday, April 6, 2020." **Exhibit 7**, Order Temporarily Closing All Public and Private Elementary and Secondary Schools.

47. Governor Baker issued COVID-19 Order 16 on March 25, 2020, extending school closures

until May 4, 2020. **Exhibit 8**, COVID-19 Order 16.

48.   Governor Baker issued COVID-19 Order 28 on April 21, 2020, extending school closures until June 29, 2020, or the end of the 2019-2020 school year. **Exhibit 9**, COVID-19 Order 28.

49.   DESE issued Initial Fall Reopening Guidance on June 25, 2020, which stated, "[o]ur goal for the fall is to <u>safely</u> bring back as many students as possible into in-person school settings, to maximize learning and address our students' holistic needs. With the information provided in this memo, districts and schools should begin planning for a fall return that includes multiple possibilities, <u>with a focus first and foremost on getting our students back into school buildings</u>." **Exhibit 10**, Initial Fall Reopening Guidance.

50.   In 2019, the U.S. DOE gave Massachusetts $227,245,216.00 in IDEA Part B Funds. **Exhibit 11**, U.S. DOE 2019 Grant Award Notification.

51.   BPS received $2,114,396.00 in "Flowthrough" IDEA funds for the 2019-2020 school year. **Exhibit 12** School District Entitlement and Allocations.

52.   SPS received $1,569,884.00 in "Flowthrough" IDEA funds for the 2019-2020 school year. *Id*.

53.   WPS received $1,170,696.00 in "Flowthrough" IDEA funds for the 2019-2020 school year. *Id.*

54.   On July 1, 2019, Jeffrey C. Riley, Commissioner of Elementary and Secondary Education for Massachusetts, received a letter from U.S. DOE stating that U.S. DOE approved Massachusetts' application for Federal Fiscal Year ("FFY") 2019 funds under Part B of IDEA. **Exhibit 13**, July 1, 2019 Letter from U.S. DOE to Commissioner Jeffrey C. Riley. The letter also notes that Massachusetts had provided a certification that its application met

the requirements of IDEA Part B and that Massachusetts would operate its Part B program following all of the required assurances and certifications. *Id.*

55. On July 1, 2020, Jeffrey C. Riley, Commissioner of Elementary and Secondary Education for Massachusetts, received a letter from U.S. DOE stating that U.S. DOE approved Massachusetts's application for Federal Fiscal Year ("FFY") 2020 funds under Part B of IDEA. The letter also notes that Massachusetts had provided a certification that its application met the requirements of IDEA Part B and that Massachusetts would operate its Part B program in accordance with all of the required assurances and certifications. **Exhibit 14,** July 1, 2020 Letter from U.S. DOE to Commissioner Jeffrey C. Riley.

56. In 2020, DESE received approximately $72,856,335 from the U.S. DOE in IDEA Part B funds. **Exhibit 15**, U.S. DOE 2020 Grant Award Notification.

57. BPS received $2,105,028 in "Flowthrough" IDEA funds for the 2020-2021 school year. **Exhibit 12** School District Entitlement and Allocations .

58. SPS received $1,578,937 "Flowthrough" IDEA dollars for the 2020-2021 school year. *Id.*

59. WPS received $1,171,071 in "Flowthrough" IDEA funds for the 2020-2021 school year. *Id.*

60. In 2021, DESE received approximately $82,686,143 from the U.S. DOE in IDEA Part B funds. **Exhibit 16**, U.S. DOE 2021 Grant Award Notification.

61. BPS received $2,105,028 in "Flowthrough" IDEA funds for the 2021-2022 school year. **Exhibit 12** School District Entitlement and Allocations.

62. SPS received $1,578,937 "Flowthrough" IDEA dollars for the 2021-2022 school year. *Id.*

63. WPS received $1,171,071 in "Flowthrough IDEA funds for the 2021-2022 school year. *Id.*

## A.R.

64. A.R. is eligible for special education from Brookline Public Schools ("BPS") due to an

9

emotional impairment. **Exhibit 2**, A.R. IEP 1/28/2021.

65.   As a result of A.R.'s emotional impairment, A.R. has global developmental impairments that adversely affect her educational abilities and performance. *Id.*

66.   A.R. struggles with work production, anxiety, and attention. *Id.*

67.   A.R.'s teachers noted, "that her attention was inconsistent, she often seemed distracted, often did not complete work, and minimally engaged in class." *Id.*

68.   A.R.'s education plan does not state whether the instruction will be in-person or virtual. *Id.*

69.   Upon information and belief, A.R. requires vocational skills consultations, academic support consultations, social-emotional support consultations, direct academic support, and direct social-emotional support to accommodate her disability so she can receive a FAPE. *Id.*

70.   On March 13, 2020, BPS ceased all in-person education due to the COVID-19 Pandemic.

71.   As a result of the March 13, 2020 closures of BPS schools, BPS altered A.R.'s IEP for the 2019-2020 school year to complete virtual instruction and services without any prior written notice and/or participation of parents.

72.   The alterations and concomitant placement of A.R. at home receiving virtual instruction and services were procedurally defective because BPS:

   a.   Altered A.R.'s IEP to complete virtual instruction without prior written notice or any written notice;
   b.   Altered A.R.'s IEP without the meaningful participation of her parents;
   c.   Failed to reconvene an IEP meeting at a time that was mutually agreeable with parents prior to, or even soon after, changing A.R.'s placement from in-person instruction and services to home placement with virtual instruction and services.
   d.   Failed to ensure that A.R. could access a free and appropriate public education on the same level as her non-disabled peers.

73.   During the 2019-2020 school year, from March 13, 2020, through June 22, 2020, A.R. received virtual instruction and services at home.

74. During the 2020-2021 school year, A.R. attended school at home with virtual instruction and services until March of 2021, when BPS offered a hybrid option.

75. Plaintiff Nancy Roe is not required to exhaust administrative due process proceedings against Defendants under 20 U.S.C. § 1415(i)(2), on behalf of A.R., because their claims fall within exceptions specified by law.

76. Plaintiff has neither waived nor abandoned any claims or arguments under IDEA or state law.

### P.M.

77. Plaintiff P.M. is eligible for special education from Somerville Public Schools ("SPS") due to autism. **Exhibit 3**, 10/09/2020 P.M. IEP.

78. As a result of P.M.'s autism, P.M. has global developmental impairments that adversely affect his educational abilities and performance. *Id.*

79. P.M. struggles with adaptive skills, social skills, and communication skills. *Id.*

80. P.M.'s IEP states his Autism Index Score "would indicate at [P.M.] requires very substantial support." *Id.*

81. Upon information and belief, P.M. requires direct, special academic instruction, speech-language therapy, and social skills services to accommodate his disability to receive a FAPE. *Id.*

82. P.M.'s IEP does not state whether P.M.'s instruction and/or services will be in-person or virtual.

83. On March 12, 2020, SPS ceased all in-person education due to the COVID-19 Pandemic.

84. As a result of the March 12, 2020 closures of SPS schools, SPS altered P.M.'s IEP for the 2019-2020 school year to complete virtual instruction and services without any prior written

notice and/or participation of parents.

85. The alterations and concomitant placement of P.M. at home receiving virtual instruction and services were procedurally defective because SPS:

   a. Altered P.M.'s IEP to complete virtual instruction without prior written notice or any written notice;
   b. Altered P.M.'s IEP without the meaningful participation of his parents;
   c. Failed to reconvene an IEP meeting at a time that was mutually agreeable with parents prior to, or even soon after, changing P.M.'s placement from in-person instruction and services to home placement with virtual instruction and services.
   d. Failed to ensure that P.M. could access a free and appropriate public education on the same level as his non-disabled peers.

86. During the 2019-2020 school year, from March 12, 2020, through June 19, 2020, P.M. attended school at home, receiving virtual instruction and services.

87. During the 2020-2021 school year, P.M. attended school at home with virtual instruction and services until April of 2021, when SPS offered a hybrid option.

88. Plaintiff Amy Maranville is not required to exhaust administrative due process proceedings against Defendants under 20 U.S.C. § 1415(i)(2), on behalf of P.M., because their claims fall within exceptions specified by law.

89. Plaintiff has neither waived nor abandoned any claims or arguments under IDEA or state law.

## **S.P.**

90. Plaintiff S.P. is eligible for special education from Wellesley Public Schools ("WPS") due to a health impairment. **Exhibit 4**, 11/1/19 S.P. IEP and 11/12/20 S.P. IEP.

91. As a result of S.P.'s health impairment, S.P. has impairments that adversely affect his educational abilities and performance. *Id*.

92. S.P. struggles with functional academics, social skills, communication skills, and attention. *Id.*

93.  Upon information and belief, S.P. received specialized academic instruction and accommodations when WPS closed due to COVID-19. *Id.*

94.  S.P.'s IEP states that he "is recommended to continue to receive direct support from a special education teacher." *Id.*

95.  S.P.'s November 1, 2019, IEP does not state whether this mode will be in-person or virtual.

96.  S.P. requires direct accommodations and special academic instruction to accommodate his disability so he can receive a FAPE. *Id.*

97.  On or around March 13, 2020, WPS ceased all in-person education due to the COVID-19 Pandemic.

98.  As a result of the March 13, 2020 closures of WPS schools, WPS altered S.P.'s IEP for the 2019-2020 school year to complete virtual instruction and services without any prior written notice and/or participation of parents.

99.  The alterations and concomitant placement of S.P. at home receiving virtual instruction and services were procedurally defective because WPS:

   a.  Altered S.P.'s IEP to complete virtual instruction without prior written notice or any written notice;
   b.  Altered S.P.'s IEP without the meaningful participation of his parents;
   c.  Failed to reconvene an IEP meeting at a time that was mutually agreeable with parents prior to, or even soon after, changing S.P.'s placement from in-person instruction and services to home placement with virtual instruction and services.
   d.  Failed to ensure that S.P. could access a free and appropriate public education on the same level as his non-disabled peers.

100.  During the 2019-2020 school year, from March 13, 2020, through June 22, 2020, S.P. attended school at home, receiving virtual instruction and services.

101.  During the 2020-2021 school year, S.P. attended school at home with virtual instruction and services until October 2020, when WPS offered a hybrid option.

102.  Plaintiff Maria Popova is not required to exhaust administrative due process proceedings

13

against Defendants under 20 U.S.C. § 1415(i)(2), on behalf of S.P., because their claims fall within exceptions specified by law.

103. Plaintiff has neither waived nor abandoned any claims or arguments under IDEA or state law.

## CLASS ACTION ALLEGATIONS

### General Class Action Allegations

104. On behalf of themselves and all similarly situated school-aged children with disabilities covered by IDEA in Massachusetts and their parents, the Plaintiffs bring this action to assert the claims alleged in this complaint on a common basis.  Specifically, Plaintiffs seek a judgment declaring that the Plaintiffs', the class members', unilateral change of educational placement for more than ten cumulative days in each of the 2019-2020 and 2020-2021 school years, respectively, from in-person instruction and services to virtual instruction and services violated the procedural safeguards of IDEA and discriminated against Plaintiffs under IDEA, the Regulations, §504, the ADA, and §1983.  Plaintiffs also seek an injunction to prevent Governor Baker, the DESE, the Named LEAs, and other similarly situated LEAs from engaging in similar conduct for more than ten cumulative days in the 2021-2022 school year and beyond, in the event of any future school closures.

105.  A class action is a superior means, and the only practicable means, by which Plaintiffs and unknown class members can challenge the actions the Defendants herein and other similarly situated LEAs DESE in Massachusetts, in restricting the rights of named Plaintiffs and similarly situated class members, under IDEA, the Regulations, the ADA, § 504, 1983 and RICO without providing them due process of law.

106. The action is brought and may properly be maintained as a class action under the Fed. R.

Civ. P. 23 (a) and 23(b)(2).

107. This action satisfies the numerosity, commonality, typicality, and adequacy requirements of Fed. R. Civ. P. 23(a), as well as the predominance and superiority requirements of Fed. R. Civ. P. 23(b)(2), where applicable.

### Rule 23(a)(1):  Numerosity

108. The class is so numerous that joinder is impracticable.

109. All the putative class members are children with disabilities under IDEA in Massachusetts and their parents.

110. The total number of individuals denied the procedural safeguards under IDEA– either in the past, current, or future – will likely number in the thousands.

### Rule 23(a)(2):  Commonality

111. Common questions of law and fact exist as to all members of the classes.

112. All class members seek relief on the common legal question of whether the Defendants herein and other similarly situated LEAs violated IDEA, the Regulations, the ADA, § 504, 1983, and RICO by altering Plaintiffs' IEPs and changing their educational placement without following the regulations promulgated under the statutes.

113. All class members also present common factual questions regarding the Defendants herein and similarly situated LEAs' closures of schools and their concomitant educational placement.

114. All class members also present common factual questions regarding whether the DESE failed to monitor the Named LEAs appropriately and similarly situated LEAs in Massachusetts and provide the LEAs (collectively) with the resources and expertise necessary to protect its disabled students' procedural safeguards guaranteed by IDEA.

115. All class members seek injunctive relief requesting that the Court: 1) Issue a judgment declaring that the class members' pendency placement is in-person instruction and services; 2) Issue a judgment declaring that the Defendant herein and other similarly situated LEAs unilateral change of placement for Plaintiffs from in-person instruction and services to virtual instruction and services violated the procedural safeguards of IDEA and discriminated against Plaintiffs under IDEA, the Regulations, § 504, the ADA, and 1983; 3) Issue a judgment declaring that the DESE failed to monitor and provide proper oversight and resources to the Defendants herein and other similarly situated LEAs during the COVID-19 pandemic as required under IDEA and the Regulations; 4) Order the DESE and the Named LEAs to comply with the procedural safeguards guaranteed by IDEA for the 2021-2022 school year for the class members unless the U.S. DOE issues IDEA waivers; 5) Assign a Special Master for a period of one year to: a) oversee the completion of Independent Education Evaluations ("IEE") for all the class members to determine regressions and loss of competencies due to the unilateral changes to their IEPs and placements, and reconvene IEP Team meetings within thirty days of the completion of the IEEs; b) make expert recommendations to the Court regarding compensatory education or pendency payments for the class members to address any regressions and/or loss of competencies; c) ensure the expert recommendations are included in writing in the class members' IEP documents; 6) Require the Defendants herein and similarly situated LEAs, to comply with IDEA, the Regulations, the ADA, § 504, and 1983 in the event of any future school closures; and 7) Assign a RICO Special Master to: a) oversee the completion of an independent audit of Defendants' expenditures of their IDEA Part B Funds from March of 2020 to the present; b) oversee the Defendants' expenditures of their IDEA Part B Funds for the 2021-2022

school year to ensure Defendants spend IDEA Part B Funds for instruction and/or services

for students with disabilities under IDEA; c) ensure any IDEA Part B Funds that Defendants

spent on items other than instruction and/or services for students with disabilities under

IDEA from March of 2020 through the present are reimbursed to a monitored account to be

spent only upon review and approval by the RICO Special Master.

### Rule 23(a)(3):  Typicality

116.  Plaintiffs' claims are typical of the claims of other respective members of the class.

117.  Like all class members, Plaintiffs are children with disabilities under IDEA in Massachusetts

and/or their parents, who were denied the procedural due process or substantive rights

provided by IDEA, the Regulations, the ADA, § 504, and 1983.

118.  All members of the class claim that the Defendants herein violated their procedural and

substantive due process rights provided by IDEA, the Regulations, the ADA, § 504, and

1983.

119.  All members of the class seek the same injunctive relief.

120.  All class members, including named Plaintiffs, seek a declaratory judgment that Defendants'

actions were unlawful and an injunction preventing Defendants from committing such

actions in the future.

121.  There is nothing distinctive about named Plaintiffs' claims for declaratory, injunctive, or

pendency relief that would lead to a different result in their case than in any case involving

other class members.

### Rule 23(a)(4):  Adequacy

122.  Plaintiffs are adequate representatives of the class because their interest in the vindication of

their rights is aligned with the interests of the other class members.

123. Plaintiffs are members of the class, and their interests do not conflict with those of the other class members concerning any claims.

124. Plaintiffs are represented by Brain Injury Rights Group attorneys, who have experience litigating complex civil rights matters in federal Courts and have detailed knowledge of IDEA, the Regulations, § 504, the ADA, 1983, and other relevant issues.

125. Class counsel has developed and continues to develop relationships with Plaintiffs and others similarly situated.

**Rule 23(b)(2):  Declaratory and Injunctive Relief Class**

126. A class action is appropriate for declaratory and injunctive relief under Fed. R. Civ. P. 23(b)(2) because Defendants have acted on grounds that generally apply to the class – namely the unilateral change of placement in March of 2020, from in-person instruction and services to virtual instruction and services – without complying with Plaintiffs' rights under IDEA, the Regulations, § 504, the ADA, and 1983.

127. The class seeks declaratory and injunctive relief to enjoin the Defendants herein and similarly situated LEAs from denying the rights guaranteed under the IDEA, the Regulations, § 504, the ADA, and §1983 to all children with disabilities.  Specifically, Plaintiffs seek a judgment declaring that during the 2019-2020 and 2020-2021 school years, the unilateral change in educational placement by Defendants for more than ten cumulative days each school year respectively, violated the procedural safeguards of IDEA and discriminated against Plaintiffs under IDEA, the Regulations, §504, the ADA and §1983. Plaintiffs also seek an injunction to prevent the Defendants herein and other similarly situated LEAs from unilaterally changing the Plaintiffs' educational placement for more than ten cumulative days in the 2021-2022 school year in the event of any future school closures.

128. Class status is particularly appropriate because there is a risk that any individual member's claim for declaratory or injunctive relief will become moot before the litigation is resolved. There is a risk that a class member that is or was a senior during the 2019-2020 and 2020-2021 school years will lose eligibility for injunctive relief under IDEA.

### Rule 23(b)(3):  Damages Class

129. Plaintiffs only seek nominal damages and prospective injunctive relief at this time. However, no claims for damages should be deemed waived by this lawsuit.

### CAUSES OF ACTION

### COUNT ONE

### SYSTEMIC VIOLATIONS OF THE INDIVIDUALS WITH DISABILITIES EDUCATION ACT

### Systemic Violation 1:  Prior Written Notice

130. Plaintiffs reiterate, repeat, and affirm each allegation set forth above as if fully set forth herein.

131. 20 U.S.C. § 1415(c)(1) requires that an LEA give prior written notice of any action proposed by the LEA regarding the provision of a Free Appropriate Public Education ("FAPE").

132. The Named LEAs did not give Plaintiffs prior written notice of their closure of schools and alteration of Plaintiffs' IEPs and school placements from in-person instruction and services to virtual instruction or services.

133. Governor Baker and the DESE failed to appropriately monitor and conduct oversight of the Defendants to ensure they complied with IDEA's procedural safeguards upon the March 2020 closing of their schools.

### Systemic Violation 2: Educational Placements

134. Under the IDEA, a school district may not alter a student's educational placement for more

than ten cumulative days in a school year without giving notice to the parent.

135. The tenth day triggers IDEA's "stay-put" procedural safeguard, and the Student must be returned to their status quo educational placement.

136. In March 2020, Defendants made the unilateral decision to transition students from in-person instruction and services to remote instruction and services that lasted for more than ten cumulative days.

137. After that, Defendants failed to return students with disabilities to their current educational placement, as drafted in their IEP's and failed to reconvene IEP meetings to revise and develop a remote IEP with the parents.

138. 20 U.S.C. § 1414(e) states that each LEA and SEA "shall ensure that the parents of each child with a disability are members of any group that makes decisions on the educational placement of their child."

139. 20 U.S.C. § 1415(j) states, "during the pendency of any proceedings conducted pursuant to this section, unless the State or local educational agency and the parents otherwise agree, the child shall remain in the then-current educational placement of the child." 20 U.S.C. § 1415(j).

140. The First Circuit has held that the stay-put provision entitles the parents of a disabled child to a preliminary injunction preserving the child's current placement during the pendency of an IDEA dispute unless the School District can demonstrate that the application of the traditional preliminary injunction criteria warrants a different result.

141. 20 U.S.C. § 1415(j) obligates courts to implement pendency placement via an automatic injunction without analyzing the traditional injunction elements. *See Doe v. Brookline Sch. Comm.*, 722 F.2d 910, 917, 919 (1st Cir. 1983) (party seeking to

modify the status quo may obtain injunctive relief by proving that a preliminary injunction changing the placement should issue).

142. The Defendants herein did not ensure that the parents of each child with a disability were included as members of any IEP Team that made decisions on the educational placement of their children.

143. The Defendants herein did not maintain Plaintiffs' pendency placement through in-person instruction.

144. Governor Baker and DESE failed to appropriately monitor and conduct oversight of named LEAs to ensure they complied with IDEA's procedural safeguards upon the March 2020 closing of its schools.

145. Plaintiffs are entitled to all appropriate relief available under IDEA, including injunctive relief declaring that the class members' pendency placement is in-person instruction and requiring the Defendants to comply with IDEA in the event of any future school closures.

**Systemic Violation 3:  Failure to Reconvene IEP Meetings**

146. 20 U.S.C. § 1414(d)(3)(F) states that the entire IEP Team may amend an IEP.

147. The Named LEAs did not reconvene IEP Team Meetings to change Plaintiffs' IEPs to provide for complete virtual instruction and services.

148. Governor Baker and DESE failed to appropriately monitor and conduct oversight of the Named LEAs to ensure that they complied with IDEA's procedural safeguards upon the March 2020 closing of its schools.

**Systemic Violation 4:  Discrimination Based on Disability and Denial of Access to Educational Services**

149. Governor Baker and DESE must ensure that each Named LEA takes steps to ensure that children with disabilities within its jurisdiction have access to the same educational

opportunities as their non-disabled peers.  20 U.S.C. § 1412(a)(2); §1413(a)(1); 34 C.F.R. § 300.110.

150. Defendants' systemic failure to ensure that children with disabilities had appropriate access to the same educational opportunities as their non-disabled peers is a violation of IDEA.

151. Defendants' actions have caused Plaintiffs damages, including regressions in skills and loss of competencies regarding the goals and objectives outlined in their IEPs.

## COUNT TWO

## VIOLATION OF 603 C.M.R. 28.08

152. Plaintiffs reiterate, repeat, and reaffirm each allegation set forth above as if fully set forth herein.

153. As described at length above, Defendants failed to provide Plaintiffs procedural safeguards upon the termination of in-person instruction in March of 2020.

154. Defendants failed to comply with the procedural requirements for prior written notice, educational placements, pendency placements, IEP Team Meetings, and equal access to instruction and services for Plaintiffs in violation of 603 C.M.R. 28.08.

155. Defendants' actions have caused Plaintiffs' damages, including regressions in skills and loss of competencies regarding the goals and objectives outlined in their IEPs.

156. All class members seek injunctive relief requesting that the Court:  1)  Issue a judgment declaring that the class members' pendency placement is in-person instruction and services; 2)  Issue a judgment declaring that the Named LEAs and other similarly situated LEAs' unilateral change of placement for Plaintiffs from in-person instruction and services to virtual instruction and services violated the procedural safeguards of the Regulations; 3) Issue a judgment declaring that the DESE failed to monitor and provide proper oversight

and resources to the Named LEAs and other similarly situated LEAs during the COVID-19 Pandemic as required under IDEA and the Regulations; 4)  Order Governor Baker and the DESE and the Named LEAs and other similarly situated LEAs to comply with the procedural safeguards guaranteed by the Regulations for the 2021-2022 school year for the class members unless the U.S. DOE issues IDEA waivers; 5) Assign a Special Master to:  a) oversee the completion of Independent Education Evaluations ("IEE") for all the class members to determine regressions and loss of competencies due to the unilateral changes to their IEPs and placements, and reconvene IEP Team meetings within thirty days of the completion of the IEEs;   b) make expert recommendations to the Court regarding compensatory education or pendency payments for the class members to address any regressions and/or loss of competencies; c) ensure the expert recommendations are included in writing in the class members' IEP documents; 6)  Require the DESE and the Named LEAs and other similarly situated LEAs to comply with the Regulations in the event of any future school closures for which the U.S. DOE does not issue IDEA waivers.

## COUNT THREE

## VIOLATION OF THE REHABILITATION ACT, 29 U.S.C. § 794

157.  Plaintiffs reiterate, repeat, and reaffirm each allegation set forth above as if fully set forth herein.

158.  Section 504 of the Rehabilitation Act of 1973 and its implementing regulations provide, "no otherwise qualified individual with a disability in the United States … shall, solely because of her or his disability, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a); 34 C.F.R. § 104.4(a).

159. Among other requirements, entities subject to Section 504 must provide equal opportunity to qualified persons with disabilities to participate in or benefit from any aid, benefit, or service they make available.  34 C.F.R. § 104.4(b)(1)(ii).

160. Entities subject to Section 504 must avoid otherwise limiting a qualified individual with a disability in the enjoyment of any right, privilege, advantage, or opportunity enjoyed by others receiving an aid, benefit, or service. 34 C.F.R. § 104.4(b)(1)(ii).

161. A person has a disability under Section 504 if they have a physical or mental impairment that substantially limits one or more of their major life activities. 42 U.S.C. § 12102(1).

162. Major life activities include, but are not limited to, caring for oneself, performing manual tasks, walking, standing, lifting, bending, speaking, learning, and working. 42 U.S.C. § 12102(2)(A).

163. A "qualified individual with a disability" is one who, with or without reasonable accommodations for their disability, meets essential eligibility requirements to receive services from or participate in the programs or activities of a recipient of federal financial assistance. 29 U.S.C. § 794(a).

164. A "program or activity" includes local education agencies, public boards of education, and school systems.  29 U.S.C. § 794(b)(2)(B), 20 U.S.C. § 7801(26). A "recipient of federal financial assistance" is a public or private agency or other entity to which federal financial assistance is extended directly or through another recipient. 34 C.F.R. § 104.3(f).

165. Plaintiffs are individuals having impairments, including but not limited to specific learning disorders and autism, that affect the major life activity of learning.

166. Plaintiffs are otherwise qualified individuals with disabilities who meet essential eligibility requirements to receive services from or participate in the programs or activities of the

24

AAPS.  42 U.S.C. § 1213(2); 29 U.S.C. § 794(a).

167.  The DESE and the Named LEAs receive federal funds to comply with § 504.

168.  The DESE and the Named LEAs are entities subject to the non-discrimination requirements

of § 504. 29 U.S.C. § 794(a); 34 C.F.R. § 104.4.

169.  The Named LEAs and other similarly situated LEA's closure of in-person instruction in

March of 2020 discriminated against Plaintiffs as persons with disabilities, who necessitate

in-person services including occupational therapy, speech therapy, social work services, and

resource room services, by denying them equal access and otherwise limiting their access to

education, programs, and services as compared to their non-disabled peers.  34 C.F.R. §

104.4(a), 104.4(b)(ii) and (iv).

170.  The Named LEAs closure of in-person instruction in March of 2020 was illegal disability-

based discrimination that violated Section 504 of the Rehabilitation Act of 1973.

171.  As a proximate cause of these violations of Section 504, Plaintiffs have suffered harm as set

forth above.

## COUNT FOUR

## VIOLATION OF TITLE II OF THE AMERICANS WITH DISABILITIES ACT
### 42 U.S.C. § 12101

172.  Plaintiffs incorporate all prior allegations.

173.  Title II of the ADA and its implementing regulations forbid public entities, including local

educational agencies, from excluding or denying people with disabilities the benefits of its

services, programs, or activities or discriminating based on disability.  42 U.S.C. § 12132;

28 C.F.R. § 35.104.

174.  Prohibited disability-based discrimination by public entities includes the failure to provide

qualified individuals with disabilities an equal opportunity to participate in or benefit from

aids, benefits, or services or "otherwise limit" a qualified individual with a disability in the enjoyment of any right, privilege, aid, benefit, or service. 28 C.F.R. § 35.130(b)(1)(h) & (vii).    Prohibited discrimination additionally includes the failure to make reasonable modifications as necessary to avoid discrimination against an individual based on their disability. 28 C.F.R. § 35.130(b)(7).

175. An "individual with a disability" is one who has a physical or mental impairment that substantially limits one or more of their major life activities.  42 U.S.C. § 12102(1).

176. Major life activities include, but are not limited to, caring for oneself, performing manual tasks, walking, standing, lifting, bending, speaking, learning, and working. 42 U.S.C. § 12102(2)(A).

177. A "qualified individual with a disability" is one who, with or without reasonable accommodations for his or her disability, meets essential eligibility requirements to receive services from or participate in the programs or activities of the public entity. 42 U.S.C. § 12131(2).

178. Plaintiffs are individuals having impairments, including but not limited to specific learning disorders, that affect major life activities of learning. 42 U.S.C. § 12102(2)(A).

179. Plaintiffs are otherwise qualified individuals with disabilities who meet the essential eligibility requirements to receive services from or participate in the programs or activities of the Named LEAs and other similarly situated LEAs.  42 U.S.C. § 12131(2).

180. Governor Baker, the DESE, and the Named LEAs are public entities forbidden to discriminate based on disability. 42 U.S.C. § 12132.

181. The Named LEAs and other similarly situated LEAs' closure of in-person instruction in March of 2020 discriminated against Plaintiffs as persons with disabilities, who necessitate

in-person services including occupational therapy, speech therapy, social work services, and resource room services, by denying them equal access and otherwise limiting their access to education, programs, and services as compared to her non-disabled peers. 34 C.F.R. § 104.4(a), 104.4(b)(ii) and (iv).

182. As a proximate cause of these violations of Title II of the Americans with Disabilities Act, Plaintiffs have suffered harm as set forth above.

## COUNT FIVE

## VIOLATION OF THE FOURTEENTH AMENDMENT OF THE U.S. CONSTITUTION (42 U.S.C. §1983) EQUAL PROTECTION

183. Plaintiffs incorporate all prior allegations.

184. Section 1 of the Fourteenth Amendment provides:

> All persons born or naturalized in the United States and subject to the jurisdiction thereof are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

> U.S. Const. Amend. XIV, § 1-Citizens.

185. In order to provide a remedy for violations of the Fourteenth Amendment, Congress has enacted § 1983, which provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

42 U.S.C. § 1983.

186.   Defendants deprived Plaintiffs of their rights as guaranteed by the Fourteenth Amendment to the United States Constitution, in violation of the Civil Rights Act of 1871, 42 U.S.C. § 1983, when it closed its in-person instruction in March of 2020.

187.   Specifically, student Plaintiffs have been deprived of their right to equal protection under the Fourteenth Amendment by the Defendants' acts under the color of state authority.

188.   Defendant Charles Baker's closure of schools in March of 2020 resulted in a disparate impact on Plaintiffs due to their disabilities in violation of the ADA and §504.

189.   Plaintiffs are all students with disabilities under the ADA and §504.

190.   Defendants closed schools in March of 2020 in response to the COVID-19 Pandemic.

191.   As a direct and proximate result thereof, Plaintiffs suffered harm, including significant regressions in skills and loss of competencies.

192.   Defendants rendered the Plaintiffs more vulnerable to harm by closing their schools.

## COUNT SIX

## VIOLATION OF THE FOURTEENTH AMENDMENT OF THE U.S. CONSTITUTION (42 U.S.C. §1983) SUBSTANTIVE DUE PROCESS

193.   Plaintiffs incorporate all prior allegations.

194.   Section 1 of the Fourteenth Amendment provides:

> All persons born or naturalized in the United States and subject to the jurisdiction thereof are citizens of the United States and of the State wherein they reside. No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.

> U.S. Const. Amend. XIV, § 1-Citizens.

195.   In order to provide a remedy for violations of the Fourteenth Amendment, Congress has

enacted § 1983, which provides:

Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

42 U.S.C. § 1983.

196. Defendants deprived Plaintiffs of their rights as guaranteed by the Fourteenth Amendment to the United States Constitution, in violation of the Civil Rights Act of 1871, 42 U.S.C. § 1983, when it closed its in-person instruction in March of 2020.

197. Specifically, Plaintiffs have been deprived of their right to education as guaranteed by the Massachusetts Constitution.

198. The Massachusetts Constitution states, in words unchanged since 1780, that "[i]t shall be the duty of legislatures and magistrates, in all future periods of this commonwealth, to cherish the… public schools and grammar schools in the towns…". Mass. Const. Pt. 2, C. 5, § 2.

199. The Supreme Judicial Court of Massachusetts held that the education clause is not merely aspirational or hortatory but also imposes on the Commonwealth an enforceable duty to provide an education for all its children, rich and poor, in every city and town through the public schools. *McDuffy v. Sec'y of Exec. Off. of Educ.*, 415 Mass. 545, 615 N.E.2d 516 (1993)

200. The Defendants' actions, as alleged above, violate the Massachusetts Constitution as set

forth above.

201. Defendants' closure of schools in March of 2020 violated Plaintiffs' substantive due process rights under the Massachusetts Constitution.

202. As a direct and proximate result thereof, Plaintiffs suffered harm, including significant regressions in skills and loss of competencies.

<u>**COUNT SEVEN**</u>

<u>**VIOLATION OF THE RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT ("RICO"), 18 U.S.C. §1962(c)**</u>
<u>**(Against Individual Defendants)**</u>

203. Plaintiffs incorporate by reference all preceding paragraphs.

204. This RICO cause of action arises from a scheme by individual Defendants Governor Charles Baker, in his official capacity, Jeffrey C. Riley, in his official capacity as the Commissioner of Schools for the Commonwealth of Massachusetts, Dr. James Marini, in his official capacity as Superintendent of Brookline Public Schools, Mary Skipper, in her official capacity as Superintendent of Somerville Public Schools, and Dr. David Lussier, in his official capacity as Superintendent of Wellesley Public Schools ("individual Defendants"), to fraudulently use their enterprises – the Massachusetts Department of Elementary and Secondary Education ("DESE"), Brookline Public Schools ("BPS"), Somerville Public Schools ("SPS"), and Wellesley Public Schools ("WPS"), respectively – to defraud Plaintiffs, the beneficiaries of IDEA Part B Funds, by making false assurances that the DESE and its LEAs complied with IDEA during the COVID-19 Pandemic. **Exhibits 9-15**.

205. As defined in 18 U.S.C. § 1961(3) and 1964(c), each Plaintiff is a person.

206. As defined in 18 U.S.C. § 1961 (3) and 1964 (c), each individual Defendant is a person.

<u>**The Applicable Statutes**</u>

207. Under 18 U.S.C. § 1962(c), it shall be unlawful for "any person employed by or associated with an enterprise engaged in, or the activities of which affect, interstate or foreign commerce to conduct or participate directly or indirectly in the conduct of such enterprise's affairs for a pattern of racketeering activity or collection of unlawful debt."

208. It is unlawful to violate any RICO substantive provisions, including 18 U.S.C. § 1962(c).

209. 18 U.S.C. § 1962(a) creates a private cause of action to "prevent and restrain violations" of 18 U.S.C. § 1962.

## The Enterprises

210. As described in 18 U.S.C. § 1961(4), the enterprises are the DESE, BPS, SPS, and WPS. Each enterprise is an association, in fact, consisting of individuals who function together as a continuing unit with consensual decision-making authority. Individual Defendants herein conduct the affairs of their respective enterprise in part through predicate activity which defrauds Plaintiffs through false assurances that the DESE, the school district Defendants, and similarly situated LEAs complied with IDEA during the COVID-19 Pandemic.

211. DESE assured the U.S. DOE that: "[c]hildren with disabilities and their parents are afforded the procedural safeguards required by 34 CFR §§ 300.400 through 300.536 and in accordance with 20 U.S.C. § 1412(a)(6); 34 C.F.R. § 300.121." **Exhibits 12-15.**

212. DESE assured the U.S. DOE that "[t]he Chief Executive Officer of a State or designee of the officer shall ensure that an interagency agreement or other mechanism for interagency coordination is in effect between each public agency described in subparagraph (b) of 34 § CFR 300.154 and the State education agency, in order to ensure that the services described in paragraph (b)(1)(i) that are needed to ensure a free appropriate public education is provided, include the provision of such services during the *pendency* of any dispute under §

300.154(a)(3)." *Id.*

213. Each individual Defendant named herein conducted the affairs of his/her respective enterprise.

214. Each enterprise operated as an ongoing organization separate and distinct from the individual Defendants.

215. Each enterprise has a structure separate and apart from the racketeering activity that the individual Defendants engaged in.

216. Each enterprise is a governmental entity that consists of numerous different individuals who function together with consensual decision-making authority to conduct the management and operation of the particular governmental entity.

217. Each enterprise had longevity sufficient to permit their respective individual RICO Defendants to pursue the enterprise's purpose.

218. The activities of each enterprise affected interstate commerce through the mail and interstate wires to and from the U.S. DOE in Washington D.C.

219. Each enterprise affected interstate commerce through each individual Defendant's unlawful transmission of assurances of compliance with IDEA via interstate electronic mail that was fraudulently prepared and submitted in furtherance of the racketeering scheme.

220. Each enterprise affected interstate commerce based on each individual Defendant's collection of IDEA Part B funds wired to them through interstate banks from the U.S. DOE based on these fraudulent assurances.

## The Racketeering Violation

221. On or about March of 2020 and continuing up through the date of the filing of this complaint, each individual RICO Defendant named herein, a person associated with or employed by

their respective enterprise, did knowingly and unlawfully conduct, or participate, directly or indirectly, in each enterprise through a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(1) and 1961 (5), all in violation of 18 U.S.C. § 1962(c).

222. Each Defendant engaged in a pattern of racketeering activity by committing at least two acts of racketeering activity within ten years of each individual act.

223. Each individual Defendant's actions violated the federal mail and wire fraud racketeering activities.

224. From March of 2020 through the present, each individual RICO Defendant knowingly and intentionally engaged in an ongoing pattern of racketeering activity under 18 U.S.C. § 1962(c) by committing the predicate acts of wire fraud and mail fraud as set forth below. The fraudulent schemes involved using the interstate wires to defraud Plaintiffs, the beneficiaries of IDEA Part B Funds, of their procedural and substantive rights.

### Predicate Acts by Officials of Each Enterprise

### Defendant Jeffrey C. Riley. for the Massachusetts Department of Education ("DESE")

225. Upon information and belief, Defendant Jeffrey C. Riley, in his official capacity as Commissioner of Schools for DESE, via mail fraud through interstate commerce, made assurances to the U.S. DOE, between January of 2019 and July of 2019, that DESE had policies and procedures in place as required by Part B of the Individuals with Disabilities Education Act. **Exhibit 13.**

226. In addition, upon information and belief, the Commissioner distributed a memo that noted that the LEAs provided certifications that Massachusetts' application would comply with the IDEA and its federal implementing regulations and that LEAs would operate their Part B programs in accordance with all of the required assurances and certifications that are

consistent with the DESE's policies and procedures. *Id*.

227. In 2019, the U.S. DOE gave DESE over $226 million in IDEA Part B Funds. **Exhibit 11**.

228. Upon information and belief, Defendant Jeffrey C. Riley., in his official capacity as Commissioner for DESE, via mail fraud through interstate commerce, made assurances to the U.S. DOE, between January of 2020 and July of 2020, that DESE had policies and procedures in place as required by Part B of the Individuals with Disabilities Education Act. **Exhibit 14**.

229. The Superintendent's memo additionally notified LEAs that LEAs provided certifications that its application would comply with the IDEA and its federal implementing regulations and that LEAs would operate its Part B program in accordance with all of the required assurances and certifications that are consistent with the DESE's policies and procedures. *Id.*

230. In 2020, the U.S. DOE gave DESE over $72,856,335 in IDEA Part B Funds. **Exhibit 15.**

231. In addition, upon information and belief, Defendant Jeffrey C. Riley, in his official capacity as Commissioner for DESE, made assurances, via mail fraud through interstate commerce, to the US DOE, between January of 2020 and July of 2020, that DESE, BPS, SPS, and WPS had "policies and procedures in place as required by Part B of the Individuals with Disabilities Education Act." **Exhibit 14**.

232. In addition, upon information and belief, Defendant Jeffrey C. Riley, in his official capacity as Commissioner for DESE, made assurances, via mail fraud through interstate commerce, to the U.S. DOE, between January of 2020 and July of 2020, that: "[c]hildren with disabilities and their parents are afforded the procedural safeguards required by 34 CFR §§ 300.400 through 300.536 and in accordance with 20 U.S.C. § 1412(a)(6); 34 C.F.R. §

300.121." *See id.*

233.  In addition, upon information and belief, Defendant Jeffrey C. Riley, in his official capacity as Commissioner for DESE, assured the U.S. DOE, via mail fraud through interstate commerce, between January of 2020 and July of 2020, that "[t]he Chief Executive Officer of a State or designee of the officer shall ensure that an interagency agreement or other mechanism for interagency coordination is in effect between each public agency described in subparagraph (b) of 34 § CFR 300.154 and the State education agency, in order to ensure that the services described in paragraph (b)(1)(i) that are needed to ensure a free appropriate public education is provided, include the provision of such services during the *pendency* of any dispute under § 300.154(a)(3)." *Id.*

234.  Upon information and belief, DESE collected the IDEA Part B funds from the U.S. DOE via wire fraud through interstate commerce.

235.  Upon information and belief, DESE received IDEA Part B funds from the U.S. DOE and then distributed them to the DESE, BPS, SPS, and WPS by wire.

236.  Upon information and belief, DESE, BPS, SPS, and WPS received the IDEA Part B funds from the DESE and used them for unlawful purposes.

237.  In furtherance of his scheme to defraud and execute his scheme to defraud, Defendant Lane used interstate wires to defraud Plaintiffs of their rights under IDEA.  The interstate wires consisted of electronic messages and the collection of federal funds through the interstate banking system, all in furtherance of the scheme to defraud and in violation of 18 U.S.C. § 1343.

238.  Upon information and belief, these interstate wires were collected by Defendant Lane in the years 2019, 2020 and are continuing to be collected to further his objective to obtain federal

funds under the false pretense that the DESE protected Plaintiffs' procedural and substantive rights under IDEA during the closure of DESE, BPS, SPS, and WPS.

239. Each use of wire communications in connection with the scheme to defraud constitutes the offense of wire fraud as prohibited by 18 U.S.C. § 1343.

240. Contrary to the individual Defendants' assurances, DESE did not give Plaintiffs prior written notice of the Named LEAs' closure of schools and alteration of Plaintiffs' IEPs and school placements from in-person instruction and services to virtual instruction or services during the COVID-19 Pandemic.

241. Contrary to the individual Defendants' assurances, DESE did not ensure that the parents of each child with a disability were included as members of an IEP Team that made decisions on the educational placement of their children during the COVID-19 Pandemic.

242. Contrary to the individual Defendants' assurances, DESE did not maintain Plaintiffs' pendency placement through in-person instruction during the COVID-19 Pandemic.

243. Contrary to the individual Defendants' assurances, the DESE did not reconvene IEP Team Meetings to change Plaintiffs' IEPs to provide for complete virtual instruction and services during the COVID-19 Pandemic.

### Defendant Dr. James Marini, for Brookline Public Schools ("BPS")

244. Upon information and belief, Dr. James Marini, in his official capacity as then-current Superintendent of BPS, assured the DESE, between January of 2019 and July of 2019, that BPS had "policies and procedures in place as required by Part B of the Individuals with Disabilities Education Act." **Exhibit 13**.

245. In addition, upon information and belief, Dr. James Marini, in his official capacity as then-current Superintendent of BPS, assured the DESE, between January of 2019 and July of

2019, that: "[c]hildren with disabilities and their parents are afforded the procedural safeguards required by 34 CFR §§ 300.400 through 300.536 and in accordance with 20 U.S.C. § 1412(a)(6); 34 C.F.R. § 300.121." *Id.*

246.   In addition, upon information and belief, Dr. James Marini, in his official capacity as then-current Superintendent of BPS, made assurances to the DESE, between January of 2020 and July of 2020 that: "[c]hildren with disabilities and their parents are afforded the procedural safeguards required by 34 CFR §§ 300.400 through 300.536 and in accordance with 20 U.S.C. § 1412(a)(6); 34 C.F.R. § 300.121." **Exhibit 14.**

247.   In furtherance of his scheme to defraud and execute his scheme to defraud, Defendant Marini used interstate wires to defraud Plaintiffs of their rights under IDEA.  The interstate wires consisted of electronic messages and the collection of federal funds through the interstate banking system, all in furtherance of the scheme to defraud and violate 18 U.S.C. § 1343.

248.   Defendant Marini used the interstate wires in 2019 and 2020 and continues to use them to further his objective to obtain federal funds under the false pretense that BPS protected Plaintiffs' procedural and substantive rights under IDEA during its closure.

## **Defendant Mary Skipper for Somerville Public Schools ("SPS")**

249.   Upon information and belief, Mary Skipper, in her official capacity as current Superintendent of SPS, assured the DESE, between January of 2019 and July of 2019, that SPS had "policies and procedures in place as required by Part B of the Individuals with Disabilities Education Act." **Exhibit 13**.

250.   In addition, upon information and belief, Mary Skipper, in her official capacity as current Superintendent of SPS, assured the DESE, between January of 2019 and July of 2019, that: "[c]hildren with disabilities and their parents are afforded the procedural safeguards required

by 34 CFR §§ 300.400 through 300.536 and in accordance with 20 U.S.C. § 1412(a)(6); 34 C.F.R. § 300.121." *Id*.

251. In addition, upon information and belief, Mary Skipper, in her official capacity as current Superintendent of SPS, made assurances to the DESE, between January of 2020 and July of 2020, that SPS had "policies and procedures in place as required by Part B of the Individuals with Disabilities Education Act." **Exhibit 14**.

252. In addition, upon information and belief, Mary Skipper, in her official capacity as current Superintendent of SPS, made assurances to the DESE, between January of 2020 and July of 2020 that: "[c]hildren with disabilities and their parents are afforded the procedural safeguards required by 34 CFR §§ 300.400 through 300.536 and in accordance with 20 U.S.C. § 1412(a)(6); 34 C.F.R. § 300.121." *See id*.

253. In furtherance of her scheme to defraud and execute her scheme to defraud, Defendant Skipper used interstate wires to defraud Plaintiffs of their rights under IDEA.  The interstate wires consisted of electronic messages and the collection of federal funds through the interstate banking system, all in furtherance of the scheme to defraud and in violation of 18 U.S.C. § 1343.

254. Defendant Skipper used the interstate wires in 2019 and 2020 and continues to use them to further her objective to obtain federal funds under the false pretense that SPS protected Plaintiffs' procedural and substantive rights under IDEA during its closure.

## Defendant Dr. David Lussier for Wellesley Public Schools ("WPS")

255. Upon information and belief, Dr. David Lussier, in his official capacity as current Superintendent of WPS, assured the DESE, between January of 2019 and July of 2019, that WPS had "policies and procedures in place as required by Part B of the Individuals with

Disabilities Education Act." **Exhibit 13**.

256.   In addition, upon information and belief, Dr. David Lussier, in his official capacity as current Superintendent of WPS, assured the DESE, between January of 2019 and July of 2019, that: "[c]hildren with disabilities and their parents are afforded the procedural safeguards required by 34 CFR §§ 300.400 through 300.536 and in accordance with 20 U.S.C. § 1412(a)(6); 34 C.F.R. § 300.121." *Id*.

257.   In addition, upon information and belief, Dr. David Lussier, in his official capacity as current Superintendent of WPS, made assurances to the DESE, between January of 2020 and July of 2020, that WPS had "policies and procedures in place as required by Part B of the Individuals with Disabilities Education Act." **Exhibit 14**.

258.   In addition, upon information and belief, Dr. David Lussier, in his official capacity as current Superintendent of WPS, made assurances to the DESE, between January of 2020 and July of 2020 that: "[c]hildren with disabilities and their parents are afforded the procedural safeguards required by 34 CFR §§ 300.400 through 300.536 and in accordance with 20 U.S.C. § 1412(a)(6); 34 C.F.R. § 300.121." *See id*.

259.   In furtherance of his scheme to defraud and to execute his scheme to defraud, Defendant Lussier used interstate wires to defraud Plaintiffs of their rights under IDEA.  The interstate wires consisted of electronic messages and the collection of federal funds through the interstate banking system, all in furtherance of the scheme to defraud and in violation of 18 U.S.C. § 1343.

260.   Defendant Lussier used the interstate wires in 2019 and 2020 and continues to use them to further his objective to obtain federal funds under the false pretense that WPS protected Plaintiffs' procedural and substantive rights under IDEA during its closure.

**Pattern of Racketeering Activity**

261.   The course of conduct engaged in by each RICO Defendant constituted both "continuity"
       and "relatedness" of the racketeering activity, thereby constituting a pattern of racketeering
       activity, as that term is defined in 18 U.S.C. § 1961(5).  **Exhibits 13-16**.

262.   The individual Defendants' predicate acts have "similar purposes, results, participants, or
       methods of commission or are related to the affairs of the Enterprise." *See id*.

263.   By allowing Defendants' conduct to continue, Defendant Governor Charles Baker remained
       complicit in the scheme.

264.   All predicate acts had the same purpose of defrauding Plaintiffs of IDEA Funds.

265.   The continuity of the pattern of racketeering activity constitutes closed-ended continuity as
       it occurred over a substantial period, from about March 2020 to the present, as Defendants
       herein have all reapplied for IDEA funding for the 2021 school year.

266.   There is a threat of continued activity as each Defendant has repeatedly engaged in illegal
       and illicit activities.  Engaging in the pattern of racketeering as set forth herein is the regular
       way the individual Defendants conduct the affairs of their respective associated association,
       in fact, enterprise.  Because each enterprise has been in existence for many years, and the
       seeking of federal funding by these individual Defendants on behalf of their associated
       association in fact enterprise will continue indefinitely, each Defendant, through the
       operation of his or her associated association in fact enterprise, remains a threat to others
       and their racketeering activity meets the open-ended continuity test.

**Injury**

267.   As a direct and proximate result of the individual Defendants' predicate acts in furtherance
       of violating 18 U.S.C. § 1962(a), Plaintiffs have been and are continuing to be deprived of

their rights under IDEA, as set forth more fully above.

268. As a direct and proximate result thereof, Plaintiffs suffered harm, including significant

regressions in skills and loss of competencies.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs respectfully request that this Court:

1. Assert jurisdiction over this matter;

2. Certify this action as a class action under Fed. R. Civ. P. 23(a) and (b)(2).

3. Issue a judgment declaring that the class members' status quo, pendency placement is in-person instruction and services;

4. Issue a judgment declaring that the unilateral change in the educational placement of the Plaintiffs for more than ten cumulative days in the 2019-2020 and 2020-2021 school years, respectively, violated the procedural safeguards and rights of Plaintiffs under IDEA and discriminated against Plaintiffs under IDEA, the Regulations, the ADA, § 504 and §1983.

5. Issue a judgment declaring that the DESE failed to monitor and provide proper oversight and resources to the Named LEAs and other similarly situated LEAs during the COVID-19 Pandemic as required under IDEA and the Regulations;

6. Order the Defendants herein to comply with the procedural safeguards guaranteed by IDEA for the 2021-2022 school year for the class members, thereby enjoining Defendants and other similarly situated LEAs from unilaterally changing the Plaintiffs' educational placement for more than ten cumulative days in the 2021-2022 school year, and in subsequent school years, in the event of any future school closures;

7. Assign a Special Master to a) oversee the completion of Independent Education Evaluations ("IEE") for all the class members to determine regressions and loss of competencies due to the unilateral changes to their IEPs and placements, and reconvene IEP Team meetings within thirty days of the completion of the IEEs;  b) make expert recommendations to the Court regarding compensatory education or pendency payments for the class members to address any regressions and/or loss of competencies, and c) ensure the expert recommendations are included in writing in the class members' IEP documents;

8. Require the Defendants herein to comply with IDEA, the Regulations, the ADA, § 504 and §1983 in the event of any future school closures;

9. Assign a RICO Assign a Special Master to a) oversee the completion of Independent Education Evaluations ("IEE") for all the class members to determine regressions and

loss of competencies due to the unilateral changes to their IEPs and placements, and reconvene IEP Team meetings within thirty days of the completion of the IEEs;  b) make expert recommendations to the Court regarding compensatory education or pendency payments for the class members to address any regressions and/or loss of competencies, and c) ensure the expert recommendations are included in writing in the class members' IEP documents;

10.   Grant Plaintiffs, all class members, an award of compensatory education as appropriate; grant Plaintiffs, all class members, and award of compensatory education in the form of an additional year of education, or more, for each school year, and/or portion thereof, Plaintiffs received remote or hybrid education; grant Plaintiffs, all class members, an award of compensatory education, as pendency, in the form of a pendency voucher, or pendency fund, to address and/or compensate Plaintiffs', class members', regressions and/or loss of competencies;

11.   Declare Plaintiffs to be the "substantially prevailing party" (for purposes of IDEA's fee-shifting provision);

12.   Award Plaintiffs, all class members, nominal damages;

13.   Grant leave to Plaintiffs to submit a statutory fee application;

14.   Allow Plaintiffs to seek punitive damages for the claims herein, except for the RICO related claims, to the extent that such damages are not barred by federal and State law;

15.   Direct Defendants to pay for the costs and expenses for maintaining this action, including reasonable attorneys' fees under 20 U.S.C. § 1415(i)(3)(B);

16.   Award attorneys' fees under the Rehabilitation Act, the Americans with Disabilities Act, and 42 U.S.C. § 1988;

17.   Retain jurisdiction over this action until this Court is satisfied that the systemic violations of the laws and regulations complained of herein have been rectified; and

18.   Grant such other or further relief that the Court may deem just and proper.


Respectfully submitted,

/s/Nakul M. Havnurkar
Nakul M. Havnurkar (704307)
Attorney for Plaintiffs
Brain Injury Rights Group
300 East 95th Street, Suite 130
New York, NY 10128
nakul@pabilaw.org

**EXHIBITS**

| 1 | *OMITTED* |
|---|---|
| 2 | A.R. IEP 01.28.2021 |
| 3 | P.M. IEP 10.09.2020 |
| 4 | S.P. IEPs 11.01.2019 and 11.12.2020 |
| 5 | 03.12.2020 Questions and Answers on Providing Services to Children with Disabilities During the Coronavirus Disease 2019 Outbreak |
| 6 | 03.21.2020 Supplemental Fact Sheet |
| 7 | 03.15.2020 Order Closing All Public and Private Elementary and Secondary Schools |
| 8 | 03.25.2020 COVID-19 Order 16 |
| 9 | 04.21.2020 COVID-19 Order 28 |
| 10 | Initial Fall Re-opening Guidance |
| 11 | 2019 IDEA MA Grant Award |
| 12 | School District Entitlement and Allocations |
| 13 | July 1, 2019 Letter from U.S. DOE to Commissioner Jeffrey C. Riley |
| 14 | July 1, 2020 Letter from U.S. DOE to Commissioner Jeffrey C. Riley |
| 15 | 2020 IDEA MA Grant Award |
| 16 | 2021 IDEA MA Grant Award |