UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 21-11751-RGS

NANCY ROE, Individually and as Parent and Natural Guardian of A.R.; AMY MARANVILLE, Individually and as Parent and Natural Guardian of P.M.; MARIA POPOVA, Individually and as Parent and Natural Guardian of S.P.; on behalf of themselves and others similarly situated

v.

CHARLES BAKER in his official capacity as Governor of Massachusetts; MASSACHUSETTS DEPARTMENT OF ELEMENTARY AND SECONDARY EDUCATION; BROOKLINE PUBLIC SCHOOLS; SOMERVILLE PUBLIC SCHOOLS; WELLESLEY PUBLIC SCHOOLS; JEFFREY C. RILEY, in his official capacity as the Commissioner of Schools; JAMES MARINI, in his official capacity as the Superintendent of Brookline Public Schools; MARY SKIPPER, in her official capacity as the Superintendent of Somerville Public Schools; and DAVID LUSSIER, in his official capacity as the Superintendent of Wellesley Public Schools

MEMORANDUM AND ORDER ON
PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION and
DEFENDANTS' MOTIONS TO DISMISS

August 31, 2022

STEARNS, D.J.

Plaintiffs – the parents and guardians of three pupils with disabilities – allege that their children were denied a free appropriate public education (FAPE) when, in response to the COVID-19 pandemic, the Massachusetts public schools they attended suspended in-person learning and offered

virtual instruction in its stead.  Plaintiffs allege that the switch to remote learning violated the student placement procedural safeguards mandated by the Individuals with Disabilities Education Act (IDEA), 20 U.S.C. § 1401 *et seq*.  Before the court are plaintiffs' motion for a preliminary injunction and defendants' motions to dismiss the Complaint.

## BACKGROUND

The IDEA provides that children with disabilities will "have available to them a free appropriate public education," commonly referred to as a "FAPE." 20 U.S.C. § 1400(d)(1)(A).  "[A] FAPE comprises 'special education and related services' – both 'instruction' tailored to meet a child's 'unique needs' and sufficient 'supportive services' to permit the child to benefit from that instruction." *Fry v. Napoleon Cmty. Sch.*, 137 S. Ct. 743, 748-749 (2017), quoting 20 U.S.C §§ 1401 (9), (26), (29).  States receive federal funds under the IDEA conditioned on their compliance with its requirements and regulations, including access for all disabled children to a FAPE.  20 U.S.C. § 1412(a).

An "'individualized education program,' called an IEP for short, serves as the 'primary vehicle' for providing each child with the promised FAPE." *Fry*, 137 S. Ct. at 749.  "Crafted by a child's 'IEP Team' – a group of school officials, teachers, and parents – the IEP spells out a personalized plan to

meet all of the child's 'educational needs.'" *Id.* When parents disagree with the school about the contents of their child's IEP, the IDEA provides for an administrative "due process hearing" before a state educational agency (in Massachusetts, the Bureau of Special Education Appeals (BSEA)). *See id.* The outcome of the "due process hearing" may be further appealed to the federal court for review. *See id.*

On March 15, 2020, Governor Baker ordered all Massachusetts public schools to close in response to the exploding COVID-19 pandemic. The closure order was later extended through the end of the 2019-2020 academic year. During the 2020-2021 school year, the state's public schools offered a mix of remote, hybrid, and in-person learning models.

Nancy Roe is the parent and guardian of A.R., a student in the Brookline Public School District (BPS). A.R. was age sixteen in March of 2020. A.R. has an emotional impairment and "struggles with work production, anxiety, and attention." Compl. (Dkt # 1) ¶ 66. "A.R. requires vocational skills consultations, academic support consultations, social-emotional support consultations, direct academic support, and direct social-emotional support to accommodate her disability so she can receive a FAPE." *Id.* ¶ 69. A.R.'s IEP does not specify whether instruction and services will be in-person or virtual. From March 13, 2020, until March of 2021, A.R.

attended school from home receiving virtual instructions and support services. BPS did not provide prior notice or seek Roe's input in switching A.R. to remote education.[1]

Amy Maranville is the parent and guardian of P.M., a student in the Somerville Public School District (SPS). P.M. was age three in March of 2020. P.M. has autism and "struggles with adaptive skills, social skills, and communication skills." *Id.* ¶ 79. P.M. requires "direct, special academic instruction, speech-language therapy, and social services to accommodate his disability to receive a FAPE." *Id.* ¶ 81. P.M.'s IEP does not specify whether instruction and services will be in-person or virtual. From March 12, 2020, until April of 2021, P.M. attended school from home receiving virtual instructions and support services. SPS did not provide prior notice or seek Maranville's input in switching P.M. to remote education.

Maria Popova is the parent and guardian of S.P., a student in the Wellesley Public School District (WPS). S.P. was age seventeen in March of 2020. S.P. has a health impairment and "struggles with functional academics, social skills, communication skills, and attention." *Id.* ¶ 92. S.P. requires "direct accommodations and special academic instruction to accommodate his disability so he can receive a FAPE." *Id.* ¶ 96. S.P.'s IEP

---

[1] A.R. graduated from BPS in June of 2022.

recommends that he "continue to receive direct support from a special education teacher," *id.* ¶ 94, although it does not specify whether this support will be in-person or virtual. From March 13, 2020, until October of 2020, S.P. attended school from home receiving virtual instruction and support services. WPS did not provide prior notice or seek Popova's input in switching S.P. to remote education.[2]

In their putative class action Complaint, plaintiffs allege that the defendants – Governor Charles Baker, the Massachusetts Department of Elementary and Secondary Education (DESE), and its commissioner (collectively "state defendants"); and Brookline Public Schools, Somerville Public Schools, Wellesley Public Schools, and their respective superintendents (collectively "school defendants") – breached the IDEA's procedural safeguards by: (1) not providing parents prior notice in advance of the switch to remote schooling; (2) unilaterally altering the students' educational placement for more than ten days; (3) failing to reconvene IEP meetings before altering the students' educational placements; and (4) engaging in disability-based discrimination by denying equal access to educational services. Plaintiffs assert violations of the IDEA (Count I) and an associated regulation, 603 C.M.R. 28.08 (Count II); the Rehabilitation

---

[2] S.P. graduated from WPS in June of 2021.

Act, 29 U.S.C. § 794 (Count III); the Americans with Disabilities Act (ADA), 42 U.S.C. § 12101 (Count IV); equal protection under the Fourteenth Amendment, 42 U.S.C. § 1983 (Count V); substantive due process under the Fourteenth Amendment, 42 U.S.C. § 1983 (Count VI); and the Racketeering Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1962(c). Plaintiffs seek declaratory and injunctive relief.

PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION

On behalf of themselves and all putative class members, plaintiffs seek to enjoin defendants from future switchovers to remote learning without first engaging in the IEP process. The IDEA, 20 U.S.C. § 1415(j), provides that "during the pendency of any proceedings conducted pursuant to this section, unless the State or local educational agency and the parents otherwise agree, the child shall remain in the then-current educational placement of the child."

> Th[is "stay put"] provision represents Congress'[s] policy choice that all handicapped children, regardless of whether their case is meritorious or not, are to remain in their current educational placement until the dispute with regard to their placement is ultimately resolved. Once a court ascertains the student's current educational placement, the movants are entitled to an order without satisfaction of the usual prerequisites to injunctive relief.

*Drinker by Drinker v. Colonial Sch. Dist.*, 78 F.3d 859, 864 (3d Cir. 1996). This provision "functions, in essence, as an automatic preliminary injunction." *Id.*

Plaintiffs contend that the abrupt transition from in-person to remote schooling for a period in excess of ten days triggered an automatic injunction. Relying on language in *N.D. ex rel. parents acting as guardians ad litem v. Hawaii Dep't of Educ.*, 600 F.3d 1104 (9th Cir. 2010), plaintiffs characterize remote schooling as a change in the students' educational placement. "[U]nder the IDEA a change in educational placement relates to whether the student is moved from one type of program—i.e., regular class—to another type—i.e., home instruction." *Id.* at 1116. In plaintiffs' view, like home instruction, virtual schooling is a different "model of education" from the students' pre-pandemic in-person classroom instruction. *Id.* at 1117. Plaintiffs also note that even in extreme instances when a special education student is found to pose a danger to others, a school may not suspend the student for more than ten days without engaging in the IDEA process. *See Honig v. Doe*, 484 U.S. 305, 325-326 (1988).

This court, like others that have grappled with this issue, respectfully disagrees. *See J.T. v. de Blasio*, 500 F. Supp. 3d 137, 185-191 (S.D.N.Y. 2020); *Bills v. Virginia Dep't of Educ.*, 2022 WL 1811383, at *4-5 (W.D. Va.

7

June 2, 2022).³ Rather, the court agrees with defendants that the "stay put" provision is not implicated in the unusual and unprecedented circumstances of this case. In *N.D.*, the Court concluded that system-wide furlough days and school closure did not trigger an automatic injunction. 600 F.3d at 1116-1117. The Court explained that "Congress's intent [in enacting the IDEA was to] protect[] disabled children from being singled out." *Id.* at 1116. "An across the board reduction of school days . . . does not . . . remove the plaintiffs from the regular classroom setting anymore than they do the other children. Disabled children are not singled out for furlough days." *Id.* Similarly, here there are no allegations that the student-plaintiffs were singled out during the pandemic – school closing and remote instruction "affect[ed] all public schools and all students, disabled and non-disabled alike." *Id.*⁴

Moreover, it is clear that "Congress did not intend for the IDEA to apply to system wide administrative decisions." *Id.*

> To allow the stay-put provisions to apply in this instance would be essentially to give the parents of disabled children veto power over a state's decisions regarding the management of its schools. The IDEA did not intend to strip administrative powers away

---

³ Plaintiffs in these two cases and the instant case share the same counsel.

⁴ Defendants note that when the schools reopened, they prioritized in-person learning for higher needs students.

8

>from local school boards and give them to parents of individual children, and we do not read it as doing so.

*Id.* at 1117. This policy consideration is particularly salient. The pandemic was (and continues to be) a global health crisis with a devastating impact that reached far beyond the defendant school districts and the Commonwealth of Massachusetts. In addition to the public schools, governments and private businesses were ordered to suspend or drastically limit in-person operations. Individual students and parents' preferences cannot, through the vehicle of the IDEA, countermand the decision of the Governor and school administrators to undertake systemic measures to avert the palpable health risks faced by students and school staff posed by teaching in an in-person environment.

It also cannot be forgotten that to allay the panic and confusion that erupted in the early days of the pandemic, the United States Department of Education (USDOE) issued guidance to schools nationwide, explicitly stating that because of the health crisis "the provision of FAPE may include, as appropriate, special education and related services provided through distance instruction provided virtually, online, or telephonically." Compl. Ex. 6 (USDOE Supplemental Fact Sheet of March 21, 2020), Dkt # 1-5 at 1-2.

> The Department understands that, during this national emergency, schools may not be able to provide all services in the same manner they are typically provided. While some schools might choose to safely, and in accordance with state law, provide certain IEP services to some students in-person, it may be unfeasible or unsafe for some institutions, during current emergency school closures, to provide hands-on physical therapy, occupational therapy, or tactile sign language educational services. Many disability-related modifications and services may be effectively provided online. . . . It is important to emphasize that federal disability law allows for flexibility in determining how to meet the individual needs of students with disabilities. The determination of how FAPE is to be provided may need to be different in this time of unprecedented national emergency.

*Id.* at 2. "**To be clear: ensuring compliance with the Individuals with Disabilities Education Act (IDEA), Section 504 of the Rehabilitation Act (Section 504), and Title II of the Americans with Disabilities Act should not prevent any school from offering educational programs through distance instruction.**" *Id.* at 1 (emphasis in original). It follows that the defendants' decisions to close schools physically and resort to remote education were contemplated and permitted by the USDOE in fulfilling the schools' duty to provide a FAPE.

The court recognizes, as plaintiffs contend, that "a person exposed to a risk of future harm may pursue forward-looking, injunctive relief to prevent the harm from occurring, at least so long as the risk of harm is sufficiently imminent and substantial." *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190,

10

2210 (2021). However, there are no present indications that defendants, having provided full-time in-person instruction in the 2021-2022 school year, have any intention of voluntarily returning to remote education even in light of medical evidence that more infectious, if less lethal, variants of the virus are beginning to emerge.[5] In other words, the court has no adequate basis on which to enter an order of prospective relief.[6]

DEFENDANTS' MOTIONS TO DISMISS THE COMPLAINT

Defendants contend that plaintiffs' FAPE-based claims (for alleged violations of the IDEA and its regulations, the Rehabilitation Act, the ADA, and § 1983) must be dismissed because they have failed to exhaust the applicable administrative remedies.

> Exhaustion is not only required before a party can litigate issues arising under the IDEA; a litigating party must also exhaust

---

[5] Since the early days of the pandemic, Massachusetts has promulgated regulations that require districts to "prioritize[] in person instruction to all students" in a public health emergency. 603 Mass. Code Regs. 27.08(2).

[6] Stay-put injunctions are also not available as class-wide relief.

> "[T]he only stay-put relief that plaintiffs could theoretically obtain would be an order allowing the individual named plaintiffs' children to remain in their educational placement." *V.D. v. State*, 403 F. Supp. 3d 76, 91 n.8 (E.D.N.Y. 2019). . . . [I]ndeed, the very title of statute – only allows an *individual* parent to demand that a school maintain an individual student's education program after the parent has initiated an individual proceeding under the IDEA.

*De Blasio*, 500 F. Supp. 3d at 185.

11

before bringing suit "pursuant to a different statute so long as the party is seeking relief that is available under subchapter II of IDEA." *Rose v. Yeaw*, 214 F.3d 206, 210 (1st Cir. 2000).

*S.S. by S.Y. v. City of Springfield, Mass.*, 318 F.R.D. 210, 220-221 (D. Mass. 2016), *aff'd sub nom. Parent/Pro. Advoc. League v. City of Springfield, Mass.*, 934 F.3d 13 (1st Cir. 2019); *see also Diaz-Fonseca v. Puerto Rico*, 451 F.3d 13, 29 (1st Cir. 2006) ("We hold that where the underlying claim is one of violation of the IDEA, plaintiffs may not use § 1983—or any other federal statute for that matter—in an attempt to evade the limited remedial structure of the IDEA.").

Plaintiffs do not dispute that they did not complete the BSEA hearing process prior to filing suit.[7] Rather, plaintiffs assert that exhaustion is not required for systematic allegations such as theirs, *see Parent/Pro. Advoc. League*, 934 F.3d 13 at 27 ("For example, the exhaustion requirement has been relaxed or waived in suits alleging systemwide violations of the processes for identifying and evaluating students with disabilities."), or in the alternative, exhaustion is futile because the BSEA does not have the authority to effectuate the systematic relief they seek. As discussed *supra*,

---

[7] Each of the three plaintiff students had BSEA hearings scheduled in March and April of 2022. Plaintiff S.P. reached a voluntary settlement with WPS prior to a hearing (but did not release WPS from the pending claims), and plaintiffs A.R. and P.M voluntarily withdrew their BSEA appeal requests. *See* Dkt # 47.

the state- and district-wide school closure decisions do not constitute an actionable change of student placement under the IDEA. Accordingly, plaintiffs have not alleged any "systemwide violation" that could plausibly "relax[] or waive[]" the exhaustion requirement.

To the extent that plaintiffs allege that the remote schooling experience did not provide a FAPE tailored to the specific needs of their children,[8] they have identified no basis for an exceptional personal exemption from the exhaustion requirement.

> The IDEA requires that a party exhaust their administrative remedies before filing suit in order to ensure the educational agency has the opportunity "to develop a factual record, to apply its expertise to the problem, to exercise its discretion, and to correct its own mistakes," prior to litigation. *Christopher W. v. Portsmouth Sch. Comm.*, 877 F.2d 1089, 1094 (1st Cir. 1989).

*S.S. by S.Y.*, 318 F.R.D. at 220. Whether each student's educational needs were adequately met, and whether they may be entitled to compensatory educational services, turns on each student's individual circumstances and must be determined and evaluated on a case-by-case basis.[9] These are questions better addressed with the benefit of the expertise and experience

---

[8] Defendants point out that none of the plaintiffs objected to the IEPs offered by their schools during the period of remote schooling. In fact, in January of 2021, plaintiff Popova requested to place S.P. in WPS's remote academy for the remainder of the school year.

[9] For the same reason, plaintiffs' proposed class does not have the requisite commonality.

13

of school educators before the court is called upon to make an informed legal assessment. Because plaintiffs have not exhausted administrative remedies before filing suit, the court lacks subject matter jurisdiction over their FAPE-based claims.[10]

---

[10] The court also agrees with defendants that plaintiffs have also not otherwise stated viable claims for the FAPE-related counts. "To prevail on a discrimination claim under the Rehabilitation Act or the ADA involving a denial of a FAPE, a plaintiff must make an additional showing that the denial resulted from a disability-based animus." *D.B. ex rel. Elizabeth B. v. Esposito*, 675 F.3d 26, 40 (1st Cir. 2012). Likewise, "[i]n order to establish its [equal protection] claim, . . . [plaintiff] needed to allege facts indicating that, 'compared with others *similarly situated,* [it] was selectively treated . . . based on impermissible considerations such as race, religion, intent to inhibit or punish the exercise of constitutional rights, or malicious or *bad faith* intent to injure a person.'" *Barrington Cove Ltd. P'ship v. Rhode Island Hous. & Mortg. Fin. Corp.*, 246 F.3d 1, 7 (1st Cir. 2001) (citation omitted, emphasis in original). Because the school closures affected all students, and plaintiffs have not alleged factually that their students were singled out based on disability or some other discriminatory basis, plaintiffs have not plausibly alleged any disability-based animus or disparate treatment.

To sketch a substantive due process claim against a state actor, "the plaintiff must show *both* that the acts were so egregious as to shock the conscience *and* that they deprived him of a protected interest in life, liberty, or property." *Pagan v. Calderon*, 448 F.3d 16, 32 (1st Cir. 2006) (emphasis in original). Putting aside whether the rights secured under the IDEA constitutes a property right and whether plaintiffs have plausibly alleged any deprivation of this right, it can hardly be said that the switch from in-person to remote instruction in response to a pandemic "shock[s] the conscience." *Cf. Desrosiers v. Governor*, 486 Mass. 369, 392-393 (2020) (concluding that Governor Baker's issuance of pandemic emergency order, including the school closure orders, was authorized under the Civil Defense Act); 603

Finally, the court agrees with defendants that plaintiffs have not stated a viable civil RICO claim. The elements of a civil RICO claim are: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985). The thrust of plaintiffs' RICO claim is that the named individual superintendents, through the school districts and DESE (the enterprises), misrepresented to the USDOE that they provided plaintiffs with a FAPE in compliance with the IDEA, and received federal funds intended for plaintiffs' benefit through mail and wire fraud (the racketeering acts).

In the context of civil RICO, the First Circuit has cautioned "particular care . . . to balance the liberality of the Civil Rules with the necessity of preventing abusive or vexatious treatment of defendants." *Miranda v. Ponce Fed. Bank*, 948 F.2d 41, 44 (1st Cir. 1991).

> Civil RICO is an unusually potent weapon—the litigation equivalent of a thermonuclear device. The very pendency of a RICO suit can be stigmatizing and its consummation can be costly; a prevailing plaintiff, for example, stands to receive treble damages and attorneys' fees. *See* 18 U.S.C. § 1964(c). For these reasons, it would be unjust if a RICO plaintiff could defeat a motion to dismiss simply by asserting an inequity attributable to a defendant's conduct and tacking on the self-serving conclusion that the conduct amounted to racketeering. Hence, to avert dismissal under Rule 12(b)(6), a civil RICO complaint must, at a bare minimum, state facts sufficient to portray (i) specific

---

Mass. Code Regs. 27.08(2)(d) (authorizing school districts to provide remote learning in the 2020-2021 school year).

instances of racketeering activity within the reach of the RICO statute and (ii) a causal nexus between that activity and the harm alleged.

*Id.*

Here, plaintiffs' claim fails on both prongs of the "bare minimum" requirement. Defendants could hardly have deceived the USDOE regarding the provision of a FAPE through remote schooling where, as discussed *supra*, remote instruction and services were explicitly encouraged and permitted by USDOE guidance. Nor is there a causal link between plaintiffs' alleged harm – the deprivation of a FAPE – and any statements defendants made to the USDOE. Defendants' alleged misrepresentations to the USDOE did not bring about the switch to remote schooling (the pandemic did).[11] *See id.* at 47 ("Put another way, a claim for wrongful discharge cannot be successfully pursued under civil RICO when the injury itself is not the result of a predicate act.").

CONCLUSION

In 2020 and 2021, the Governor and school officials closed schools in response to a new and alarming pandemic. They made these decisions without the hindsight that we now have, two and half years later. While the

---

[11] For this reason, the court also agrees with defendants that to the extent that anyone has standing to seek recovery in the scheme envisioned by plaintiffs, it would be the federal government and not plaintiffs.

16

court is sympathetic to the fact that the lengthy period of remote schooling was difficult for plaintiffs and their children, as it was for many other students and their families, the Complaint has not identified any legal basis to lay the blame at defendants' door.  For the foregoing reasons, plaintiffs' motion for a preliminary injunction is DENIED, and defendants' motions to dismiss are ALLOWED.

                                                   SO ORDERED.

                                                   /s/ Richard G. Stearns
                                                   UNITED STATES DISTRICT JUDGE